# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALBERT C. BURGESS, JR.,      )
                             )
          Plaintiff,         )
                             )
          v.                 )        1:11CV193
                             )
EBAY, INC., et al.,          )
                             )
          Defendants.        )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for review of Plaintiff's "Civil Complaint-Amended [/] Objection to Order of this Court" (Docket Entry 28), pursuant to 28 U.S.C. § 1915A(a) and (b).  For the reasons that follow:

1) as to Claims Three, Five, Seven, Eight, Ten, Twelve, Thirteen, and Fourteen in the "Civil Complaint-Amended," Plaintiff will be ordered to submit:  A) separate, new complaints; and B) either the applicable filing fee or a proper pauper application;

2) Plaintiff will be ordered to file a separate memorandum of not more than five pages with each new complaint showing cause why each such new complaint should not be transferred to another district via 28 U.S.C. § 1406(a);

3) Plaintiff will be ordered to file a separate memorandum of not more than five pages along with the new complaints as to Claims Three, Eight, Ten, Twelve, and Thirteen in the "Civil Complaint-

Amended" showing cause why each such new complaint should not be dismissed for want of subject matter jurisdiction due to the fact that each such "Claim" asserts only state law causes of action and lacks sufficient allegations to support the Court's exercise of diversity jurisdiction under 28 U.S.C. § 1332(a);

4) Plaintiff will be ordered to include factual allegations as to the place(s) and time(s) of occurrence of the events alleged in each new complaint;

5) a recommendation of dismissal will be made for Claims One, Two, Four, Six, Nine, and Eleven for failure to state a claim; and

6) a recommendation will be made that the "Objection to Order of this Court" be disregarded as an untimely objection to a non-dispositive, pretrial ruling by a Magistrate Judge under Federal Rule of Civil Procedure 72(a).

## BACKGROUND

"On November 18, 2009, [Plaintiff] was convicted, after a trial by jury, of violating 18 U.S.C. § 2252(a)(4)(B) and 18 U.S.C. § 2252(a)(2)." Burgess v. United States, No. 1:09CV451-1-MU, 2010 WL 92441, at *1 (W.D.N.C. Jan. 6, 2010) (unpublished), aff'd, 371 F. App'x 449 (4th Cir. 2010).  He has since remained "in custody based upon [those] conviction[s] in the Western District of North Carolina . . . [for which he] was sentenced to a total of 292 months' imprisonment." Burgess v. Lappin, C/A No. 2:11-2074-CMC-BHH, 2011 WL 4950061, at *2 (D.S.C. Oct. 18, 2011) (unpublished);

see also United States v. Burgess, 684 F.3d 445 (4th Cir.) (affirming Plaintiff's foregoing convictions and prison sentence), cert. denied, ___ U.S. ___, 133 S. Ct. 490 (2012). Plaintiff "is well-versed in the filing requirements of a variety of actions in the courts, having filed over thirty (30) actions in th[e] District [of South Carolina] alone." Burgess, 2011 WL 4950061, at *2 n.4.

Those filings in the District of South Carolina included a case Plaintiff brought "under 42 U.S.C. § 1983 on April 4, 2002." Burgess v. Taylor, No. C/A 8:02-1090-22, 2003 WL 22937930, at *1 (D.S.C. Mar. 18, 2003) (unpublished), aff'd, 67 F. App'x 820 (4th Cir. 2003). "At that time, Plaintiff was incarcerated by the United States Bureau of Prisons . . . pursuant to [an] order revoking [his] supervised release . . . dated September 21, 2001." Id. at *1 n.1.[1] A Magistrate Judge "recommend[ed] that [said]

_____

[1] Said term of supervised release arose from a federal perjury conviction Plaintiff obtained in connection with federal litigation he pursued while serving a state prison sentence. See Burgess, 2003 WL 22937930, at *2 ("[O]n August 20, 1985, . . . [Plaintiff] entered a plea in state court of 'guilty but mentally ill' to various charges of criminal sexual conduct involving minors. He was sentenced to an aggregate term of 25 years and was committed to the South Carolina Department of Corrections. In 1997, [Plaintiff] was released into federal custody to begin serving a sentence for perjury."); see also United States v. Burgess, Nos. 93-5571, 93-7268, 21 F.3d 425 (table), 1994 WL 137007, at *1 & n.1 (4th Cir. Apr. 18, 1994) (unpublished) (stating that Plaintiff "pled guilty to one count of knowingly making a false material declaration in an application to proceed in forma pauperis in violation of 18 U.S.C. § 1623 . . . [and received a sentence of] sixteen months incarceration to run consecutively to the state sentence which he [was then] serving . . . [and] three years of supervised release" and identifying state sentence in question as follows: (continued...)

action be dismissed for failure to state a claim." Id. at *5. The assigned United States District Judge "agree[d] with the conclusions and reasoning of the Magistrate Judge . . . [and] the Report and Recommendation of the Magistrate Judge [wa]s adopted . . . ." Id. at *1. The United States Court of Appeals for the Fourth Circuit thereafter "affirm[ed] for the reasons stated by the district court." Burgess, 67 F. App'x at 821.

In addition to his litigation in the District of South Carolina and his instant case, Plaintiff recently had a case in this Court dismissed for failure to comply with court orders, see Burgess v. Williams, No. 1:11CV316 (M.D.N.C. June 1, 2012) (unpublished), a case in the District of Massachusetts dismissed as frivolous and for failure to state a claim, see Burgess v. eBay, Inc., Civil Action No. 11-10334-RGS, 2011 WL 1344167 (D. Mass. Apr. 8, 2011) (unpublished) (incorporating reasoning from Burgess v. eBay, Inc., Civil Action No. 11-10334-RGS, 2011 WL 841269 (D. Mass. Mar. 8, 2011) (unpublished)), appeal dismissed, No. 12-1119 (1st Cir. June 15, 2012), and a case in the Northern District of California dismissed for failure to comply with court orders, see

---

[1](...continued)
"[Plaintiff] was convicted in a South Carolina state court on August 20, 1985, of conspiring to commit criminal sexual conduct on minors, committing or attempting lewd acts upon a child under 14, and committing sexual battery of a child under 16. The court sentenced [him] to 25 years imprisonment.").

-4-

<u>Burgess v. eBay, Inc.</u>, No. C11-1898SBA, 2013 WL 655163 (N.D. Cal. Feb. 21, 2013) (unpublished).

The instant case began when Plaintiff paid a $350.00 filing fee (<u>see</u> Docket Entry dated Mar. 7, 2011 (documenting receipt of payment)) and submitted a 13-page Complaint (docketed on March 10, 2011 (<u>see</u> Docket Entry 1 at 1)[2] and dated as signed on February 21, 2011 (<u>see</u> <u>id.</u> at 13)) which purported to name 22 Defendants in connection with claims of "civil rights violations and breach of contract and privacy [violations] . . . [including] by persons who are sworn to uphold the laws of the United States" (<u>id.</u> at 2; <u>see also</u> <u>id.</u> ¶¶ 3-69). After seven paragraphs addressing (in conclusory fashion) the alleged basis for the Court's jurisdiction and venue, as well as the citizenship and/or residence of the putative parties (<u>id.</u> ¶¶ 1-7), the Complaint sets forth 64 paragraphs of allegations (under the heading "Statement of Facts/Claims") asserting (in generally conclusory fashion) that Defendants harmed Plaintiff (<u>see</u> <u>id.</u> ¶¶ 8-69).[3]

As noted above, the Complaint identifies some of the putative Defendants as government officers or employees (<u>id.</u> at 2 (describing lawsuit as targeting in part "persons who are sworn to

---

[2] Where possible, citations to Plaintiff's pleadings will refer to paragraph numbers, but, where (as here) reference to material not contained within a numbered paragraph becomes necessary, citations to page numbers will appear.

[3] The Complaint includes two paragraphs each numbered as 16 and 17. (<u>See</u> Docket Entry 1 at 4.)

-5-

uphold the laws of the United States"); see also id. ¶¶ 8-11 (indicating that Defendants Patrick Wilhelm, Pat Redden, and Beth Dierauf were government officials), 25 (alleging that Defendant Tim Woo "works for the US District Court as a probation officer"), 33 (referring to Defendant Deputy USMC Howard as "a rogue US Marshal").) This Court has an obligation to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a) (emphasis added). As previously noted, at the time he filed the Complaint, Plaintiff was incarcerated as a result of a sentence imposed for a federal criminal conviction and thus qualified as a "prisoner" within the meaning of Section 1915A, see 28 U.S.C. § 1915A(c).

The Court (per the undersigned Magistrate Judge) therefore reviewed the Complaint under Section 1915A, which provides, in relevant part, that: "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, . . . [that] fails to state a claim upon which relief may be granted . . . ." 28 U.S.C. § 1915A(b). After completing that review, the Court entered a Screening Order on May 12, 2011, that states, in relevant part, as follows:

### III. Pleading Deficiencies

A review of all of Plaintiff's claims reveals that none of them provides sufficient facts to allow

-6-

Defendants to formulate an answer or other response to the Complaint. Plaintiff's first claim is a perfect example of the problems exhibited by all of Plaintiff's claims. In it, Plaintiff alleges that Defendants Wilhelm, Redden, and Dierauf "did perform an illegal search and arrest of the Plaintiff." (Docket Entry 1, ¶ 8.) Plaintiff's "home was searched without a search warrant ever being presented, a fact Wilhelm would later perjure himself about in Court documents." (*Id.*) Plaintiff does not state when or where this search occurred or give the specifics of Wilhelm's alleged perjury. (*See id.*) Plaintiff goes on to allege that "evidence against the Plaintiff was altered and then lied about to the presiding judge and the jury in the trial of the Plaintiff." (*Id.* ¶ 9.) Plaintiff does not specify what evidence was altered, how, when, or by whom. He next claims that Redden and Dierauf conspired with Wilhelm and unknown federal officials "to deny the Plaintiff a Speedy Trial, suppress evidence, and deny him due process of the law by bringing a sham prosecution in state court that was nothing more than a holding action." (*Id.* ¶ 10.) Plaintiff again fails to set out any factual matter to support his conclusory claims. (*See id.*) Plaintiff concludes his first claim for relief by asserting that these Defendants violated "numerous Constitutional rights of the Plaintiff, under the 4th, 5th, 6th amendments to the United States Constitution" and that they did so "intentionally, willfully, and with malice to ensure a sham prosecution was successful." (*Id.* ¶ 11.) This allegation represents a purely legal conclusion without any factual support or explanation.

Plaintiff's other nineteen claims are similarly flawed in that they allege that individual defendants, or groups of them, violated Plaintiff's rights, breached contracts with him, defrauded him, and violated various laws. In each instance, the Complaint lacks sufficient factual support to set out a claim for relief or to allow the involved defendants to formulate a response. In many instances, the claims consist more of legal conclusions than factual statements. Plaintiff has not supplied enough factual information to state any claim for relief. He has instead set out exactly the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that do not state a claim under *Iqbal*.

Because of Plaintiff's failure to plead a proper claim for relief, his Complaint is subject to dismissal. Ordinarily, the Court would dismiss the Complaint without prejudice to Plaintiff filing a new complaint correcting the pleading defects. However, it appears that Plaintiff is near or beyond the statute of limitation as to some or all of his claims. For that reason, the Court will stay this action for thirty days and will allow Plaintiff to amend his Complaint. In filing any such amended pleading, Plaintiff must set out specific facts as to each claim and defendant to establish that a viable claim for relief exists. He must make the cause of action clear as to each claim and defendant and must state to the best of his ability when and where the alleged facts occurred.

## IV. Potential Heck Bar

A number of Plaintiff's claims appear to be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Many, if not all, of his federal constitutional, civil rights, and federal law claims seem to seek monetary damages in a manner which would undermine Plaintiff's criminal convictions in the Western District of North Carolina. Plaintiff may not proceed in such a fashion without first showing that his convictions have been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through the issuance of a writ of habeas corpus. *Id.* As already stated, public records show that Plaintiff's convictions have not been reversed, but are still on appeal. For this reason, Plaintiff's federal claims are potentially barred by the doctrine in *Heck*. If so, they would be dismissed. At this point, however, the nature of Plaintiff's claims lacks sufficient clarity to allow a determination of this issue. In amending his Complaint, Plaintiff must provide a legal basis as to why his federal claims seeking monetary damages may proceed under the rule in *Heck*.

## V. Venue

In a civil action "wherein jurisdiction is not founded solely on diversity of citizenship," 28 U.S.C. § 1391(b), venue lies:

> only in (1) a judicial district where any
> defendant resides, if all defendants reside in

the same State, (2) a judicial district in
which a substantial part of the events or
omissions giving rise to the claim occurred,
or a substantial part of property that is the
subject of the action is situated, or (3) a
judicial district in which any defendant is
subject to personal jurisdiction at the time
the action is commenced, if there is no
district in which the action may otherwise be
brought.

*Id.* Here, according to the Complaint, the Defendants
reside in at least two different states. (Docket Entry
1, ¶¶ 3-7.) In any event, nothing in the Complaint
suggests that any of them reside in the Middle District
of North Carolina. Therefore, subsection (1) is
inapplicable. A "substantial part of the events or
omissions giving rise" to Plaintiff's claims appear to
have occurred in the Western District of North Carolina
and nothing in the Complaint alleges that any of the
relevant acts or omissions occurred in this District.
Under subsection (2), venue thus may lie in the Western
District of North Carolina, but likely not in this Court.
The third subsection of § 1391(b) would not apply given
that the Complaint apparently could have been brought in
the Western District of North Carolina.

. . . For now, the venue issue remains sufficiently
unclear that the Court will not transfer the case at this
time. Cf. *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th
Cir. 1986) (requiring opportunity for parties to be heard
before transfer decision). Nevertheless, Plaintiff
should allege enough facts in his amended complaint for
the Court to make a venue determination if one becomes
necessary or appropriate.

(Docket Entry 5 at 4-8.)

In response to that Screening Order, Plaintiff filed the

instant, 28-page "Civil Complaint-Amended [/] Objection to Order of

this Court" which purports to name as Defendants 19 of the 22

Defendants from the original Complaint (i.e., all except Defendants

Steven Slawinski, Howard, and Woo). (<u>Compare</u> Docket Entry 1, <u>with</u>

-9-

Docket Entry 28.)[4]  It alleges in conclusory fashion that this Court has jurisdiction "under 28 U.S.C.A. §1331 and §1332," as well as venue "under 28 U.S.C.A. §1391(a) and (b)."  (Docket Entry 28, ¶ 8.)  Further, it states that Plaintiff "is a citizen and resident of Virginia" (id. ¶ 9), but its signature block lists an address in Florida for Plaintiff (id. at 28).  Moreover, Plaintiff later mailed the Clerk a letter stating "[m]y address is listed below" followed by an address in North Carolina.  (Docket Entry 34 at 1.)

The "Civil Complaint-Amended [/] Objection to Order of this Court" identifies 10 of the putative individual Defendants as "citizens and residents of North Carolina."  (Docket Entry 28, ¶ 10.)  It describes the two other putative individual Defendants as "citizens and residents of South Carolina . . . [who] have made minimum contacts with the Middle District of North Carolina . . . ."  (Id. ¶ 11.)  According to said document, the seven putative organizational Defendants "are all either North Carolina businesses or are doing business in the Middle District of North Carolina."  (Id. ¶ 12.)  The bulk of the "Civil Complaint-Amended [/] Objection to Order of this Court" consists of 118 paragraphs

---

[4] The 30-day amendment period set by the Screening Order ended on Sunday, June 12, 2011, and thus, by operation of Federal Rule of Civil Procedure 6(a)(1)(C) and (d), Plaintiff had until June 16, 2011, to amend his Complaint.  The Clerk docketed Plaintiff's "Civil Complaint-Amended [/] Objection to Order of this Court" on June 9, 2011 (see Docket Entry 28 at 1) and, therefore, Plaintiff complied with the amendment deadline without regard to the prison-mailbox rule, see generally Houston v. Lack, 487 U.S. 266 (1988).

setting out 14 separate "Claims," each of which identifies between one and six of the 19 putative Defendants. (See id. ¶¶ 13-130.) The "Objection to Order of this Court" portion of the said document asserts that "the application in any way of [28 U.S.C.] §1915 or §1915A is illegal, violates due process and presents a huge wall for the Plaintiff to climb over." (Id. ¶ 5.)

## DISCUSSION

As an initial matter, the undersigned Magistrate Judge notes that the foregoing "Objection to Order of this Court" is untimely under Federal Rule of Civil Procedure 72(a). Said Rule states:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a) (emphasis added).

The Screening Order did not dispose of any claims, but instead merely directed Plaintiff to amend his Complaint within 30 days. (See Docket Entry 5 at 8.) Rule 72(a)'s 14-day time period for objections thus applied to the Screening Order and commenced on May 12, 2011, when the Court served Plaintiff by mail with the Screening Order. (See Docket Entry dated May 12, 2011.) That 14-day period ended on May 26, 2011, but, due to the use of mail to

-11-

effect service, Plaintiff received an additional three days plus a further two days until the next business day, i.e., until May 31, 2011, to file any objections, see Fed. R. Civ. P. 6(a)(1)(C) and (d). Even if the Court set the filing date of the "Civil Complaint-Amended [/] Objection to Order of this Court" at the earliest possible point, i.e., June 6, 2011 (the date, according to the notarization on the "Verification" page, on which Plaintiff signed said filing (see Docket Entry 28 at 28)), Plaintiff did not comply with Rule 72(a)'s time limitation.

Accordingly, under the plain language of Rule 72(a), the Court need not consider Plaintiff's "Objection to Order of this Court." See, e.g., Solis v. Malkani, 638 F.3d 269, 274 (4th Cir. 2011) ("[A] party's failure to object to a magistrate judge's recommendations within [now fourteen] days in either a nondispositve, Fed. R. Civ. P. 72(a), or a dispositive matter, Fed. R. Civ. P. 72(b), waives further review."); Federal Election Comm'n v. Christian Coal., 178 F.R.D. 456, 459 n.3 (E.D. Va. 1998) ("Rule 72(a) additionally provides that failure to serve timely objections waives the right to do so in the future.").

Turning to the "Civil Complaint-Amended," review reflects that Plaintiff seeks to maintain claims against government officials. (See, e.g., Docket Entry 28, ¶ 15 (identifying Defendant Redden as "a police officer" in claim purporting to state cause of action against her).) For reasons set forth above, the Court (per the

-12-

undersigned Magistrate Judge) therefore must review Plaintiff's "Civil Complaint-Amended" under 28 U.S.C. § 1915A. That review confirms that this case cannot go forward for <u>at least</u> six reasons:

1) the "Civil Complaint-Amended" joins claims against multiple defendants in contravention of Federal Rule of Civil Procedure 20(a)(2), requiring either the dropping of numerous putative Defendants (and thus the claims against those Defendants) or severance under Federal Rule of Civil Procedure 21;

2) the allegations as to the misjoined "Claims" in the "Civil Complaint-Amended" appear to establish that this Court lacks venue over said "Claims," such that Plaintiff must show cause why, if severed into separate actions, each new action should not be transferred to another district under 28 U.S.C. § 1406(a);

3) a number of the misjoined "Claims" in the "Civil Complaint-Amended" appear to assert only state law causes of action and to allege insufficient facts to support the Court's exercise of diversity jurisdiction, such that Plaintiff must show cause why, if severed into separate actions, those new actions should not be dismissed for want of subject matter jurisdiction;

4) the misjoined "Claims" in the "Civil Complaint-Amended" lack sufficient factual allegations as to the place(s) of occurrence of the events alleged;

-13-

5) the misjoined "Claims" in the "Civil Complaint-Amended" lack sufficient factual allegations as to the time(s) of occurrence of the events alleged; and

6) the "Claims" that do not require dropping or severance based on misjoinder should be dismissed for failure to state a claim.

## Improper Joinder

As set out in the Background section, the "Civil Complaint-Amended" purports to assert 14 separate "Claims" (many of which actually contain multiple claims) against disparate groupings of between one and six of the total number of 19 putative Defendants. "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a) (emphasis added). "Thus multiple claims against a single party are fine . . . ." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

However, where, as here, a plaintiff seeks to join not multiple claims against a single defendant, but multiple claims against multiple defendants, another provision of the Federal Rules of Civil Procedure comes into play, i.e., the limitation that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;

-14-

and (B) <u>any question of law or fact common to all defendants will</u> <u>arise in the action</u>." Fed. R. Civ. P. 20(a)(2) (emphasis added). In other words, "[u]nrelated claims against different defendants belong in different suits . . . ." <u>George</u>, 507 F.3d at 607.[5]

The "Claims" in Plaintiff's "Civil Complaint-Amended" run too wide a gamut to permit joinder under Rule 20(a)(2), as shown by this summary:

1) violations by Defendants Wilhelm, Dierauf, and Redden of: A) Plaintiff's Fourth Amendment right against unreasonable searches (and North Carolina law regarding searches), in connection with the search of his home in an unspecified location (apparently in North Carolina, perhaps Henderson County, which forms part of the Western District of North Carolina, <u>see</u> 28 U.S.C. § 113(c)) on or about March 6, 2008; B) Plaintiff's federal constitutional right (and right under North Carolina law) against false arrest in connection with his arrest on an unspecified date (apparently on or after March 6, 2008, but before January 2009) in an unspecified location (apparently in North Carolina, perhaps Henderson County); C)

_____

[5] Many district courts outside the Seventh Circuit, including a number in the Fourth Circuit, expressly have followed <u>George</u> on this and related points. <u>See, e.g.</u>, <u>Woods v. County of Wilson</u>, No. 5:10CT3118BO, 2011 4460619, at *4 (E.D.N.C. Sept. 26, 2011) (unpublished); <u>Chandler v. James</u>, 783 F. Supp. 2d 33, 39 (D.D.C. 2011); <u>Proctor v. Applegate</u>, 661 F. Supp. 2d 743, 779 (E.D. Mich. 2009); <u>Showalter v. Johnson</u>, No. 7:08CV276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009) (unpublished); <u>Robinson v. Johnson</u>, No. 3:07CV449, 2009 WL 874530, at *1 (E.D. Va. Mar. 26, 2009) (unpublished); <u>McCoy v. Willis</u>, No. 4:07CV3563-PMD-TER, 2008 WL 4221745, at *5 (D.S.C. Sept. 15, 2008) (unpublished).

Plaintiff's federal constitutional and statutory rights (and related rights under North Carolina law) to a speedy trial in connection with charges pending against him over an unspecified 10-month period (apparently ending in early 2009) in an unspecified location (apparently in North Carolina, perhaps Henderson County); D) Plaintiff's rights under the laws of the United States and North Carolina related to the withholding of evidence over an unspecified period (apparently ending in early 2009) in an unspecified location (apparently in North Carolina, perhaps Henderson County); and E) Plaintiff's unspecified rights against alteration of evidence, falsification of records, and misrepresentations to state judges and magistrates, to Plaintiff's attorney, and in sworn testimony on unspecified dates in unspecified locations (Docket Entry 28, ¶¶ 13-19 ("Claim One"));

2) violations by: A) Defendants Wilhelm and Mediacom, LLC of 18 U.S.C. §§ 2701 et seq., in connection with the accessing of unspecified information about Plaintiff on unspecified dates in unspecified locations; B) Defendants Redden, eBay, Inc., and Paypal, Inc. of 18 U.S.C. §§ 2520 et seq. and 2701 et seq., in connection with the accessing of online records of Plaintiff without legal process on unspecified dates in unspecified places; C) Defendants Wilhelm, Redden, and Google, Inc. of Plaintiff's due process rights, in connection with the accessing of Plaintiff's e-mail account without legal process on unspecified dates in

unspecified places; and D) Defendants Wilhelm, Redden, Mediacom, eBay, and Paypal of unspecified laws, in connection with the creation of charges against Plaintiff on an unspecified date in an unspecified location (id. ¶¶ 20-26 ("Claim Two"));

3) legal malpractice by: A) Defendants Jason Hayes, James Kilbourne, Jr., and Greg Newman, in connection with the inadequate defense of state charges on unspecified dates (apparently beginning on or after March 6, 2008, and ending in early 2009) in unspecified locations (apparently in North Carolina, perhaps Henderson County); B) Defendants John D. Elliott and Scott Elliott (in his capacity as the alleged legal guarantor of Defendant John D. Elliott's debts), in connection with the breaking of attorney-client confidentiality by revealing to law enforcement officials Plaintiff's location and e-mail address without legal process and by failing to have an attorney present for a polygraph examination, all on unspecified dates in unspecified locations; and C) Defendant Clinton Rudisill, in connection with the disclosure of attorney-client privileged information and creation of a conflict of interest by offering (in an e-mail from and to an unspecified location on an unspecified date) to cause Plaintiff to plead guilty in exchange for Defendant Rudisill's receipt of a job with an unspecified United States

-17-

Attorney (apparently for the Western District of North Carolina) (id. ¶¶ 27-42 ("Claim Three"));[6]

4) violation of unspecified laws by Defendants eBay, Paypal, Google, and Mediacom, in connection with falsification of unspecified records, creation of unspecified accounts, and unspecified lies to law enforcement officials, all at unspecified locations on unspecified dates (id. ¶¶ 43-46 ("Claim Four"));[7]

5) breach of contract and/or violation of unspecified federal and North Carolina banking and privacy laws by Defendants Bank of York, Inc. and DHL Express, Inc., in connection with an unauthorized transaction in which Defendant DHL Express received payment for disputed freight charges from Plaintiff's account with Defendant Bank of York and Defendant DHL Express's failure to pay for claims by Plaintiff regarding damaged goods, all at unspecified locations on unspecified dates (id. ¶¶ 47-52 ("Claim Five"));

6) violation of unspecified federal, North Carolina, and South Carolina privacy laws and the Fourth Amendment (via 42 U.S.C. § 1983) by Defendants Redden and Bank of York, in connection with the

---

[6] Claim Three also asserts that Defendants John D. Elliott and Scott Elliott bear liability for violation of unspecified privacy laws as a result of this conduct. (See Docket Entry 28, ¶ 33.)

[7] Claim Four also alleges that American Express violated unspecified federal privacy laws and committed unspecified torts by using a computer hacker to harass Plaintiff. (See Docket Entry 28, ¶ 45.) However, neither the caption of the "Civil Complaint-Amended" (id. at 1), nor the paragraphs that identify Defendants (id. ¶¶ 10-12) purport to name American Express as a Defendant.

-18-

obtaining by Defendant Redden of records from Defendant Bank of York, a South Carolina bank, with a subpoena and search warrant issued by a North Carolina District Judge, at unspecified locations on unspecified dates (id. ¶¶ 53-60 ("Claim Six"));

7) breach of contract and violation of Plaintiff's federal constitutional right to due process (via Section 1983) by Defendant Dorothy Vaniman, in connection with her taking and/or giving away, prior to any proper eviction and at the behest of a "rogue detective from the Transylvania County Sheriff's Office," of Plaintiff's property in an apartment in Transylvania County, North Carolina, on an unspecified date (id. ¶¶ 61-69 ("Claim Seven"));

8) breach of contract and fraud by Defendant Osteen Properties, LLC, in connection with Plaintiff's lease of an apartment in Hendersonville, North Carolina, on unspecified dates (id. ¶¶ 70-79 ("Claim Eight"));

9) violation of 18 U.S.C. §§ 1030 et seq., 2501 et seq., and 2701 et seq., as well as other unspecified federal statutes, by Defendants John D. Elliott, Scott Elliott (apparently in his capacity as the alleged legal guarantor of Defendant John D. Elliott's debts), and Google, in connection with Defendant John D. Elliott's and Google's assistance to an official with the United States Marshal's Service in tracking Plaintiff's e-mails in unspecified locations on unspecified dates on or after March 28, 2008 (id. ¶¶ 80-87 ("Claim Nine"));

-19-

10) legal malpractice by Defendants John D. Elliott and Scott Elliott (apparently in his capacity as the alleged guarantor of Defendant John D. Elliott's debts), in connection with the improper handling (from unspecified locations and on unspecified dates) of a lawsuit filed by Plaintiff (apparently in South Carolina) against an Indiana corporation (id. ¶¶ 88-96 ("Claim Ten"));

11) violations of unspecified federal privacy laws, the Fourth Amendment, due process, and the right against false imprisonment by Defendants eBay and Paypal, in connection with the provision of information about Plaintiff to law enforcement officials without legal process at unspecified locations and on unspecified dates (in or after 2007) (id. ¶¶ 97-106 ("Claim Eleven"));

12) breach of contract by Defendant Gene Clary and tortious interference with contract by Defendant Lee Atkins, in connection with a contract between Plaintiff and Defendant Clary to operate a business in Hendersonville, North Carolina, on unspecified dates (id. ¶¶ 107-17 ("Claim Twelve"));

13) legal malpractice by Defendant Rudisill, in connection with the revelation of attorney-client privileged information to a United States Attorney's Office (apparently for the Western District of North Carolina) at unspecified locations in or after 2009 (id. ¶¶ 118-26 ("Claim Thirteen")); and

14) violation of unspecified "free trade statutes" by Defendants eBay, Google, and Mediacom, in connection with the use

of computer software to direct internet users to eBay at unspecified locations and on unspecified dates (id. ¶¶ 127-30 ("Claim Fourteen")).

Plaintiff's Complaint lacked sufficient detail to warrant addressing misjoinder; however, with the limited, additional material in the "Civil Complaint-Amended," the unsustainability of Plaintiff's effort to join all of his "Claims" against different groupings of one to six of 19 putative Defendants has become so clear that the Court must now deal with the misjoinder issue. See George, 507 F.3d at 607 ("The district court did not question [the plaintiff's] decision to join 24 defendants, and approximately 50 distinct claims, in a single suit. It should have done so."). As with the complaint in George, Plaintiff's "Civil Complaint-Amended" does "not make any effort to show that the [19] defendants he named had participated in the same transaction or series of transactions or that a question of fact is common to all defendants." Id. (internal quotation marks omitted). The Court thus cannot allow Plaintiff to proceed on all the "Claims" in the "Civil Complaint-Amended." See id. ("A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.").

-21-

Courts must enforce Rule 20's joinder limitations in cases such as this one "not only to prevent the sort of morass that [results when a plaintiff puts numerous claims against numerous defendants into one complaint] but also to ensure that prisoners pay the required filing fees . . . ." Id. Plaintiff effectively has sought to commence numerous lawsuits for the price of one filing fee. The undersigned Magistrate Judge, like other courts, see, e.g., Showalter v. Johnson, No. 7:08CV276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009) (unpublished), declines to permit such fee-avoidance.

Moreover, by misjoining unrelated claims against multiple defendants, Plaintiff perhaps "was trying not only to save money but also to dodge th[e] [Prison Litigation Reform Act ("PLRA")]." George, 507 F.3d at 607. "[T]he 'three strikes' provision of the . . . [PLRA] generally prohibits a prisoner from proceeding in forma pauperis ('IFP') if he has previously had three or more actions dismissed as frivolous, malicious, or for failing to state a claim." Tolbert v. Stevenson, 635 F.3d 646, 647 (4th Cir. 2011) (citing 28 U.S.C. § 1915(g)). By misjoining "Claims" (and claims within such "Claims"), Plaintiff may have "hoped that if even 1 of his [many] claims were deemed non-frivolous [or sufficient to state a claim], he would receive no 'strikes' at all, as opposed to the [multiple strikes] that would result from making [numerous] frivolous [or legally insufficient] claims in a batch of [multiple]

-22-

suits." <u>George</u>, 507 F.3d at 607. Indeed, Plaintiff has particular cause to attempt to avoid a decision that would constitute a "strike" under the PLRA because, as documented in the Background section, he now has two such "strikes" (i.e., the dismissals in <u>Burgess</u>, 2003 WL 22937930, and <u>Burgess</u>, 2011 WL 1344167) and thus a third "strike" would subject him to the PLRA's IFP ban. The Court (again, in line with the actions of other courts, <u>see, e.g.</u>, <u>Showalter</u>, 2009 WL 1321694, at *4) cannot allow Plaintiff to insulate himself from the PLRA through misjoinder.

Based on the foregoing authority and after a thorough review, the undersigned Magistrate Judge concludes that Claims Three, Five, Seven, Eight, Ten, Twelve, Thirteen, and Fourteen of the "Civil Complaint-Amended" cannot proceed as part of this case due to misjoinder under Rule 20. Simply put, said claims concern matters and Defendants too distinct from the allegations of governmental misconduct (aided by a private attorney and five corporations) during Plaintiff's underlying criminal case set forth in Claims One, Two, Four, Six, Nine, and Eleven of the "Civil Complaint-Amended." Moreover, Claim Three of the "Civil Complaint-Amended" contains separate claims for legal malpractice against several attorneys, resulting in further misjoinder within that claim.

The Court next must select the proper remedy. "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the [C]ourt may at any time, on just terms, add or drop a

party. The [C]ourt may also sever any claim against a party."
Fed. R. Civ. P. 21. "Where, as here, statute of limitations
concerns arise, courts should sever rather than simply dismiss the
misjoined claims [by dropping defendants]." <u>Robinson v. Johnson</u>,
No. 3:07CV449, 2009 WL 874530, at *2 (E.D. Va. Mar. 26, 2009)
(unpublished).

To accomplish severance, "Plaintiff must file new complaints
for his severed claims. Any forthcoming new complaints must
comport with Rules 8 and 20 of the Federal Rules of Civil Procedure
. . . [and] must stand or fall of their own accord." <u>Id.</u> As to
Claim Three of the "Civil Complaint-Amended," Plaintiff must submit
separate complaints as to Defendants Kilbourne, Newman, John D.
Elliott (along with Scott Elliott, as the alleged legal guarantor
of John D. Elliott's debts), and Rudisill.[8] Plaintiff may
incorporate Claim Ten of the "Civil Complaint-Amended" into the new
complaint against Defendants John D. Elliott and Scott Elliott and
may incorporate Claim Thirteen of the "Civil Complaint-Amended"
into the new complaint against Defendant Rudisill. Plaintiff also
must submit separate complaints for Claims Five, Seven, Eight,
Twelve, and Fourteen of the "Civil Complaint-Amended."

---

[8] As noted above in the summary of the "Claims" in "Civil
Complaint-Amended," Claim Three also included a legal malpractice
claim against Defendant Jason Hayes; however, the Court (per United
States District Judge Catherine C. Eagles) previously granted
Defendant Hayes's dismissal motion (<u>see</u> Docket Entry 55).

In addition, "Plaintiff will be responsible for the full filing fee for each new complaint he submits." Id.; accord Showalter, 2009 WL 1321694, at *6 ("Each new lawsuit will obligate [the plaintiff] to pay the [applicable] district court filing fee pursuant to 28 U.S.C. § 1915(g)."). If Plaintiff takes the position that he lacks sufficient funds to pay the filing fee applicable to each new complaint, he must file a proper application for IFP status with each new complaint as to which he does not pay the full filing fee. The Court will conduct appropriate screening under 28 U.S.C. § 1915(e)(2) as to any such new, successor complaint for which Plaintiff seeks IFP status.

<u>Improper Venue</u>

As detailed in the Background section, the Screening Order advised Plaintiff of the venue requirements and highlighted both the apparent lack of venue and/or the absence of allegations necessary to assess venue. Moreover, it directed Plaintiff to "allege enough facts in his amended complaint for the Court to make a venue determination if one becomes necessary or appropriate." (Docket Entry 5 at 7-8.) A review of the "Civil Complaint-Amended" reveals that Plaintiff did not heed this instruction. To the contrary, as shown in the summary in the preceding section regarding the misjoined "Claims," venue <u>either</u> appears lacking (in that, based on the allegations, no Defendant therein appears to reside in the Middle District of North Carolina, a substantial part

-25-

of the events described therein failed to occur in the Middle District of North Carolina, and another district exists where venue would lie, see 28 U.S.C. § 1391(a) and (b)) or Plaintiff has pled insufficient facts to permit any determination as to proper venue.

If (consistent with the discussion in the preceding subsection) Plaintiff files new complaints, the Court will have to consider transfer under 28 U.S.C. § 1406(a). See LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 526 (4th Cir. 1987) ("[If] venue [i]s improper . . ., transfer of [Plaintiff's] action [i]s required under 28 U.S.C. § 1406(a)."). "Although a motion by one of the parties is ordinarily required for transfer, the district court may consider the possibility of transfer sua sponte . . . [but generally must afford] an opportunity to be heard before a decision is rendered." Feller v. Brock, 802 F.2d 722, 729 n.7 (4th Cir. 1986); accord Caldwell v. Palmetto State Sav. Bank of S.C., 811 F.2d 916, 919 (5th Cir. 1987) ("Under the transfer statute, a district court may transfer a case upon a motion or sua sponte."). Accordingly, the Court will direct Plaintiff to file contemporaneously with any such new complaint a memorandum of up to five pages showing cause why the Court should not transfer that complaint to another district under Section 1406(a).

## Lack of Diversity Jurisdiction

Once Plaintiff files any new complaints to accomplish the required severance, each such new complaint must stand on its own,

-26-

including as to the existence of subject matter jurisdiction. <u>See</u> <u>generally</u> <u>Robinson</u>, 2009 WL 874530, at *2 ("Any forthcoming new complaints [carrying out a required severance] . . . must stand or fall of their own accord."). Claims Three, Eight, Ten, Twelve, and Thirteen of the "Civil Complaint-Amended" appear to assert only state law causes of action and to lack facts to support the Court's exercise of diversity jurisdiction under 28 U.S.C. § 1332(a). For any new complaint as to said "Claims," the Court therefore will order Plaintiff to contemporaneously file a memorandum of up to five pages showing cause why the Court should not dismiss any such new complaint(s) for want of subject matter jurisdiction.

<u>Lack of Allegations as to Place</u>

"An allegation of . . . place is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f). As documented in the prior summary of the "Claims" in the "Civil Complaint-Amended," the allegations in the misjoined Claims fail to provide sufficient information as to the place(s) where the events at issue occurred. Because of the materiality of such allegations to the evaluation of the sufficiency of a complaint, the Court will order Plaintiff to allege where events relevant to the above-referenced claims took place in any new complaints he files as part of the severance required in this case.

-27-

## Lack of Allegations as to Time

"An allegation of time . . . is material when testing the sufficiency of a pleading." Fed. R. Civ. P. 9(f). As documented in the summary of the "Claims" in the "Civil Complaint-Amended" in a preceding section, the allegations in the misjoined Claims fail to provide sufficient information as to the time(s) when the events at issue occurred. Because of the materiality of such allegations to the evaluation of the sufficiency of a complaint, the Court will order Plaintiff to allege when events relevant to the above-referenced claims took place in any new complaints he files as part of the severance required in this case.

## Failure to State a Claim

As set forth in the summary above, Claims One, Two, Four, Six, Nine, and Eleven of the "Civil Complaint-Amended" all purport to assert claims under federal, North Carolina, and or South Carolina law, as well as the United States Constitution, against three government officials (i.e., Defendants Wilhelm, Dierauf, and Redden), as well as two individuals (i.e., Defendants John D. Elliott and Scott Elliott) and five corporate entities (i.e., Defendants eBay, Paypal, Google, Mediacom, and Bank of York), allegedly involved in the investigation and prosecution of state and/or federal charges related to the criminal case in the Western District of North Carolina for which Plaintiff currently remains imprisoned. Under Section 1915A, "the [C]ourt shall . . . dismiss

-28-

the complaint, or any portion of the complaint, [that] . . . fails to state a claim upon which relief may be granted . . . ." 28 U.S.C. § 1915A(b). Such a failure arises when a complaint lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[9]

---

[9] Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n. 5 (4th Cir.2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less (continued...)

In addressing motions filed by Defendants Wilhelm and Dierauf (see Docket Entries 31 and 39), this Court (per United States District Judge Catherine C. Eagles) has ruled that the "Civil Complaint-Amended" fails to state a claim under the foregoing pleading standards against said defendants because it contains only labels and conclusions (Docket Entry 54 at 2) and pursuant to the Heck bar (also discussed in the Screening Order) (Docket Entry 56 at 2), respectively. After careful review of Claims One, Two, Four, Six, Nine, and Eleven of the "Civil Complaint-Amended," the undersigned Magistrate Judge concludes that the above-referenced rationales given by Judge Eagles for dismissing the claims against Defendants Dierauf and Wilhelm render Claims One, Two, Four, Six, Nine, and Eleven subject to dismissal for failure to state a claim as against all of the other Defendants therein named. Further, as Judge Eagles observed in her order granting Defendant Dierauf's dismissal motion, pursuant to the Screening Order, Plaintiff "was given an opportunity to amend, without meaningful change." (Docket Entry 54 at 2.) Under these circumstances, as with the claims against Defendants Dierauf and Wilhelm, the Court should dismiss

---

[9](...continued)
stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

with prejudice Claims One, Two, Four, Six, Nine, and Eleven of the "Civil Complaint-Amended" as against the remaining Defendants.

CONCLUSION

Plaintiff has misjoined claims against multiple defendants in contravention of Federal Rule of Civil Procedure 20(a)(2), requiring severance pursuant to Federal Rule of Civil Procedure 21. Because the misjoined claims contain allegations showing lack of venue and/or diversity jurisdiction, he must show cause why the Court should not transfer or dismiss any post-severance, successor complaints Plaintiff files. In filing new complaints to carry out the required severance, Plaintiff also must include sufficient allegations as to the material matters of place and time. Additionally, Claims One, Two, Four, Six, Nine, and Eleven of the "Civil Complaint-Amended" fail to state a claim. Finally, Plaintiff's objections to the Screening Order were untimely.

**IT IS THEREFORE RECOMMENDED** that the "Objection to Order of this Court" be denied as untimely under Federal Rule of Civil Procedure 72(a).

**IT IS FURTHER RECOMMENDED** that Claims One, Two, Four, Six, Nine, and Eleven of the "Civil Complaint-Amended" be dismissed with prejudice under 28 U.S.C. § 1915A(b) for failure to state a claim.

**IT IS ORDERED** as follows:

1) on or before August 16, 2013, as to Claims Three, Ten, and Thirteen of the "Civil Complaint-Amended," Plaintiff shall submit:

-31-

A) separate, independent, and legally sufficient new complaints for Defendants Kilbourne, Newman, John D. Elliott (along with Scott Elliott, as the alleged legal guarantor of John D. Elliott's debts), and Rudisill that states to the right of the caption for each of those four new complaints, "NEW COMPLAINT FOR SEVERED CLAIM(S) _____ FROM 1:11CV193" with the number(s) of the corresponding "Claim(s)" from the "Civil Complaint-Amended" in the blank; and B) either the applicable filing fee or a proper application to proceed as a pauper;

2) on or before August 16, 2013, as to Claims Five, Seven, Eight, Twelve, and Fourteen of the "Civil Complaint-Amended," Plaintiff shall submit: A) separate, independent, and legally sufficient new complaint for each such "Claim" that states to the right of the caption for each of those five new complaints, "NEW COMPLAINT FOR SEVERED CLAIM _____ FROM 1:11CV193" with the number of the corresponding "Claim" from the "Civil Complaint-Amended" in the blank; and B) either the applicable filing fee or a proper application to proceed as a pauper;

3) if Plaintiff files any such new complaints as to Claims Three, Five, Seven, Eight, Ten, Twelve, Thirteen, and Fourteen of the "Civil Complaint-Amended," he shall contemporaneously file a separate memorandum up to five pages in length with each such complaint showing cause why each such complaint should not be transferred to another district via 28 U.S.C. § 1406(a);

-32-

4) if Plaintiff files new complaints as to Claims Three, Eight, Ten, Twelve, and Thirteen of the "Civil Complaint-Amended," he shall contemporaneously file a separate memorandum up to five pages in length with each such complaint showing cause why each such complaint should not be dismissed for want of subject matter jurisdiction;

5) if Plaintiff files new complaints as to Claims Three, Five, Seven, Eight, Ten, Twelve, Thirteen, and Fourteen of the "Civil Complaint-Amended," Plaintiff shall include in each such complaint factual allegations as to the place(s) of occurrence of events alleged; and

6) if Plaintiff files new complaints as to Claims Three, Five, Seven, Eight, Ten, Twelve, Thirteen, and Fourteen of the "Civil Complaint-Amended," Plaintiff shall include in each such complaint factual allegations as to the time(s) of occurrence of events alleged.

**A FAILURE BY PLAINTIFF TO COMPLY WITH THE FOREGOING ORDER WILL RESULT IN DISMISSAL OF ANY SURVIVING PORTION OF THIS ACTION WITHOUT FURTHER NOTICE TO PLAINTIFF.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 13, 2013

-33-